UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KRISTINE BAKER,** | : | |
| | : | |
| *Plaintiff,* | : | |
| v. | : | **Case No. 7:23-cv-01626** |
| | : | |
| **RALDINO POWELL, R.N.,** | : | |
| **DR. ELLEN GOMPRECHT, M.D.,** | : | **AMENDED COMPLAINT AND** |
| **SUPERINTENDENT AMY** | : | <u>**JURY TRIAL DEMAND**</u> |
| **LAMANNA** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

Plaintiff Kristine Baker (c/o Prisoners' Legal Service of New York) ("<u>Ms. Baker</u>" or "<u>Plaintiff</u>"), by and through her undersigned attorneys, as and for this Amended Complaint against Raldino Powell, R.N. ("<u>Defendant Powell</u>"), Dr. E. Gomprecht, M.D. ("<u>Defendant Gomprecht</u>"), and Superintendent Amy Lamanna ("<u>Defendant Lamanna</u>"),[1] alleges as follows:

<u>**NATURE OF ACTION**</u>

1.      This civil rights action arises from the rape and sexual assault of Ms. Baker, which occurred during her incarceration at Bedford Hills Correctional Facility ("Bedford Hills").

---

[1] The sole substantive difference between the Complaint and the Amended Complaint is that the latter names Defendant Superintendent Amy Lamanna in place of Defendant Superintendent Eileen Russell.

1

Plaintiff brings this action to recover damages from Defendants and to deter sexual abuse in New York State Prisons in the future.

2.      The sexual abuse of Ms. Baker was part of a pattern of sexual misconduct by Defendant Powell, a nurse at Bedford Hills. Defendant Gomprecht and Defendant Lamanna were made aware and had knowledge of Defendant Powell's sexual misconduct yet failed, on several occasions, to take any measures to protect Ms. Baker from the ongoing sexual abuse.

3.      Based upon the egregious misconduct detailed herein, Plaintiff seeks compensatory and punitive damages, costs, interest, and attorneys' fees pursuant to 42 U.S.C. § 1983.

<u>**JURISDICTION AND VENUE**</u>

4.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C §§ 1331, 1343(3) and (4). This Court has personal jurisdiction over Defendants because they reside in this District and/or engaged in conduct relevant to Plaintiff's claims in this District. Venue is proper in this division.

<u>**PARTIES**</u>

5.      Plaintiff Kristine Baker is currently an incarcerated individual at Albion Correctional Facility. She is a resident of Orleans County, New York.

6.      Defendant Powell is a "person" under 42 U.S.C. § 1983. At all relevant times, Defendant Powell was an employee of the New York State Department of Corrections and Community Supervision (the "<u>NYSDOCCS</u>") and was working as a nurse at Bedford Hills, acting under color of New York state law.  Defendant Powell is being sued in his individual capacity.

7.      Defendant Gomprecht is a "person" under 42 U.S.C. § 1983. At all relevant times, Defendant Gomprecht was an employee of the NYSDOCCS and was working as a doctor at

Bedford Hills, acting under color of New York state law. Defendant Gomprecht is being sued in her individual capacity.

8.     Defendant Lamanna is a "person" under 42 U.S.C. § 1983. At all relevant times, Defendant Lamanna was the Superintendent of Bedford Hills, acting under color of New York state law. Defendant Lamanna is being sued in her individual capacity.

## FACTUAL ALLEGATIONS

### Background

9.     At all times relevant to this action, Ms. Baker was a state prisoner.

10.     On February 12, 2020, Ms. Baker was transferred from Oswego County Jail, where she had been incarcerated prior to her trial, to Bedford Hills in order to begin serving her sentence.

11.     As an incarcerated individual, Ms. Baker was fully reliant upon the prison staff, including Defendants, for her health and safety.

12.     The Prison Rape Elimination Act of 2003 ("PREA") establishes a zero-tolerance policy for prison rape and imposes national standards for the detection, prevention, reduction, and punishment of prison rape. 34 U.S.C. §30301 et seq.

13.     Under New York Penal Law § 130.05, a person is incapable of consenting to sexual conduct with an employee of the state if the person is "committed to the care and custody or supervision of the state department of corrections and community supervision…and the actor is an employee knows or reasonably should know that such person is committed to the care and custody or supervision of such department." At all times relevant to this action, Ms. Baker was incapable of consenting to sexual conduct of any kind with Defendant Powell.

3

14.      NYSDOCCS Directive No. #4027 ("Directive #4027"), Sexual Victimization Prevention & Response implements policies and procedures pursuant to New York State's PREA obligations.

15.      Directive #4027 categorically prohibits NYSDOCCS employees from engaging in any form of sexual contact with an incarcerated individual.

16.      Directive #4027 establishes procedures for NYSDOCCS employees to report suspected or reported sexual abuse committed by NYSDOCCS staff against incarcerated individuals held in the custody and care of NYSDOCCS.

17.      Directive #4027 Section V(B)(1)(a)(1) on reporting requires that all NYSDOCCS staff "shall report to a supervisor immediately…any knowledge, suspicion, or information regarding any incident of sexual abuse or sexual harassment that occurred in a facility…and any unauthorized relationship."

18.      Directive #4027 Section V(C)(1)(a) requires that "all reports of sexual abuse must be medically assessed immediately at the facility or an outside hospital emergency department, regardless of whether or not the allegation has been independently verified prior to the victim's presentation for treatment."

19.      Directive #4027 Section V(B)(1)(f) requires that "pursuant to Directive #0700…under no circumstances shall a facility or Community Supervision Bureau investigation involving sexual abuse, sexual harassment, or an unauthorized relationship be initiated unless and until OSI [Office of Special Investigations] has been consulted." This requirement establishes that OSI must be contacted and consulted once any NYSDOCCS employee receives a report of sexual abuse or sexual harassment.

20.     Directive #4027 Section V(E) requires that "each correctional facility shall complete Form #4027MRC 'Monthly Report of Sexual Victimization Summary'…that shall be a chronological listing of each report of sexual victimization that occurs during a given month for review by the Superintendent. The Monthly Report shall be reviewed and approved by the ADS PCM and the Superintendent."

**Defendant Powell's Initial Sexual Harassment and Assault of Plaintiff**

21.     On February 28, 2020, Ms. Baker was seen for a medical examination at Bedford Hills' Regional Medical Unit (the "RMU"), due to a rash on her stomach.

22.     On February 29, 2020, Ms. Baker returned to the RMU for further medical treatment related to the aforementioned rash. Ms. Baker was treated by Defendant Powell at the RMU.

23.     Defendant Powell conducted a medical examination of Ms. Baker and requested to look at Ms. Baker's stomach to observe the rash.

24.     In accordance with Defendant Powell's instructions, Ms. Baker raised the lower part of her shirt to provide Defendant Powell with a clear view of the area of her stomach affected by the rash.

25.     Defendant Powell subsequently demanded that Ms. Baker "pull [her] pants down" so that he could look at the rash. At no point did Ms. Baker complain of a rash on the lower half of her body, nor did Defendant Powell articulate any reason for the inspection of Ms. Baker's intimate parts. Defendant Powell's demand for Ms. Baker and examination of Ms. Baker's intimate parts were not medically necessary.

26.     Immediately following Defendant Powell's improper demand, Defendant Powell began to verbally and sexually harass Ms. Baker, making the unwelcome sexual comment that Ms. Baker has a "nice body."

27.     Ms. Baker was called back to the clinic at 1:30 p.m. that same day, February 29, 2020. Ms. Baker, who was under the impression that further medical examination was required in order to diagnose the rash, returned to the RMU at 1:30 p.m. on February 29, 2020.

28.     During this visit, Defendant Powell did not conduct any sort of medical examination of Ms. Baker. Defendant Powell entered the medical cubicle that Ms. Baker was in, and without any warning and without requesting permission to approach, pulled shut the cubicle curtain, blocking the cubicle from sight from the rest of the room. Defendant Powell then immediately approached Ms. Baker and kissed her on her mouth.

29.     Ms. Baker was shocked and appalled by Defendant Powell's actions and reported his sexual misconduct by making a PREA complaint to a medical staff member (hereafter "Nurse A"), on February 29, 2020. As part of the PREA complaint process, Ms. Baker met with Nurse A on the evening of February 29, 2020. Ms. Baker described the abuse and harassment by Defendant Powell that occurred earlier that day. Nurse A memorialized this PREA complaint and assessment. In the documentation from this assessment, Nurse A diagnosed Ms. Baker with "rape/trauma syndrome" and "risk for rape/trauma syndrome."

30.     On or around March 1, 2020, Ms. Baker called the PREA Statewide Rape Crisis Hotline, which is intended to connect incarcerated survivors to a rape crisis counselor/advocate for crisis counseling, medical advocacy, legal advocacy, and additional support. On this call, Ms. Baker corrected the assailant's name in her PREA complaint, identifying him as Defendant Powell. On an addendum to the PREA complaint dated March 7, 2020, Nurse A noted that Dr. Gomprecht

was notified of the incident, that an incident report was made, and an OMH referral was submitted. Dr. Gomprecht had notice of the PREA complaint and did not take action to ensure that Ms. Baker be protected from future sexual abuse by her assailant.

31.     Upon information and belief, pursuant to the policy for reporting laid out in Directive #4027, Defendant Lamanna received notice of Ms. Baker's PREA complaint in the form of "the monthly report," yet Defendant Lamanna took no action to prevent further sexual abuse and harassment of Ms. Baker. Upon information and belief, Plaintiff's PREA complaint was received by the Office of Special Investigations (the "OSI") on or around February 29, 2020, yet no action was taken for several weeks by OSI or any security staff.

32.     Following Ms. Baker's initial PREA complaint regarding the sexual misconduct, Defendant Powell threatened Ms. Baker with solitary confinement in the Special Housing Unit (the "SHU"), where he stated that she would be "taken care of" by other incarcerated individuals.

**Defendant Powell's Increased Access to Plaintiff between February and April 2020**

33.     Between February and April 2020, Ms. Baker experienced various health issues that required several visits to the RMU for medical treatment. These health issues included the aforementioned stomach rash, asthma, back pain, and COVID-19-related symptoms. These visits also provided Defendant Powell with increased access to Ms. Baker and further opportunities to sexually harass and abuse Ms. Baker.

34.      On April 16, 2020, Defendant Gomprecht and other medical staff admitted Ms. Baker to isolation in the RMU because of suspected Covid-19. Ms. Baker had not tested positive for COVID-19 but was placed in isolation as a precautionary measure due to symptoms consistent with COVID-19.

35.     Ms. Baker was kept in isolation by medical staff, including Dr. Gomprecht who had actual notice of her PREA complaint, despite the serious, ongoing, and obvious risk of sexual abuse by Defendant Powell due to increased access to Ms. Baker with no other supervision present.

**Defendant Powell Repeatedly Rapes Ms. Baker While She is in Medical Isolation**

36.     As a result of Defendant Gomprecht and Defendant Lamanna's indifference to the serious risk of further sexual abuse to Ms. Baker by Defendant Powell, Defendant Powell was able to interact with Ms. Baker alone while she was in isolation.

37.     While Ms. Baker was in isolation, Defendant Powell interacted with Ms. Baker multiple times, took her temperature, and noted her symptoms in her medical notes.

38.     Defendant Powell sexually abused and raped Ms. Baker on multiple nights during the time that she was in respiratory isolation in RMU between April 16 and April 27, 2020.

39.     Ms. Baker became agitated and expressed thoughts of self-harm while in respiratory isolation on April 21, 2020. Ms. Baker was admitted to the RCTP on April 21, 2020 following this incident, but was released back into the RMU isolation unit on April 22, 2020.

40.     Ms. Baker was given medical clearance after testing negative for Covid-19 and was released back into general population from isolation on April 27, 2020.

**Defendant Powell Continues to Rape Ms. Baker While Assigned to Work in the RMU**

41.     For some period of time after the filing of Ms. Baker's PREA complaint until her transfer out of Bedford Hills, Ms. Baker was assigned to work in the RMU, where Defendant Powell also worked.

42.     During Ms. Baker's work assignment in the RMU, Defendant Powell raped her repeatedly.

43.     During Ms. Baker's work assignment in the RMU, J.E., an incarcerated individual who also worked in the RMU, observed Defendant Powell ordering and taking Ms. Baker into a private room numerous times. Defendant Powell would order J.E. to stand guard while he took Ms. Baker into a private room.

44.     On or around May 10, 2020, J.E. reported to an unknown official at the facility that Ms. Baker had become pregnant as a result of a sexual relationship between Ms. Baker and Defendant Powell.

45.     On May 11, 2020, Ms. Baker was admitted to the infirmary on security hold and was given a pregnancy test the next day, May 12, 2020. The pregnancy test result was negative, indicating that Ms. Baker was not, in fact, pregnant.

46.     At no time between Ms. Baker's initial PREA complaint regarding Defendant Powell's sexual abuse on February 29, 2020, and the date of Ms. Baker's transfer out of Bedford Hills was a rape kit conducted on Ms. Baker or ordered by Defendant Gomprecht or Defendant Lamanna.

47.     Ms. Baker was transferred to Albion Correctional Facility on May 13, 2020.

48.     As a result of Defendants' misconduct, Ms. Baker suffered mental anguish and severe emotional distress.

## FIRST CAUSE OF ACTION
### (Against All Defendants Under 42 U.S.C. §1983)

49.     Defendant Powell committed an ongoing pattern of sexual harassment and abuse of Ms. Baker, in violation of her right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

50.     Defendant Lamanna and Defendant Gomprecht, through their policies, practices, acts, and omissions, exhibited deliberate indifference to the risk of sexual harassment and abuse of Ms. Baker, in violation of her right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

51.     With deliberate indifference to the substantial risk of serious harm to Ms. Baker, Defendant Lamanna and Defendant Gomprecht failed to appropriately investigate and act upon Ms. Baker's PREA complaint, which resulted in Ms. Baker's subjection to further sexual abuse and sexual harassment by Defendant Powell and placement of Ms. Baker at increased risk of retaliation for reporting the sexual misconduct, in violation of the Eighth Amendment of the United States Constitution.

52.     With deliberate indifference to the substantial risk of serious harm to Ms. Baker, Defendant Lamanna and Defendant Gomprecht failed to offer and provide adequate medical treatment, including, *inter alia*, the failure to order a rape kit following Ms. Baker's PREA complaint and also following J.E.'s false report that Ms. Baker was pregnant. As a result, Ms. Baker was subjected to serious emotional and mental harm in violation of the Eighth Amendment of the United States Constitution.

## SECOND CAUSE OF ACTION
### (Against All Defendants Under 42 U.S.C. §1983)

53.     Defendants deprived Ms. Baker of her right to be free from sexual abuse and sexual harassment, and of her right to bodily integrity, without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor and against Defendants as follows:

1) Award Plaintiff compensatory damages in an amount to be determined at trial;

2) award punitive damages against all Defendants in an amount to be determined at trial;

3) award Plaintiff reasonable attorneys' fees, costs, and disbursements;

4) award Plaintiff pre- and post-judgment interest; and,

5) grant Plaintiffs such additional and further relief as the Court deems just and proper.

Dated: April 20, 2023

New York, New York

SEIDEN LAW LLP

Amiad Kushner, Esq.
Priya Lehal, Esq.
322 Eighth Avenue, Suite 1704
New York, New York 10001
(212) 523-0669

James Bogin, Esq.
Karen Murtagh, Executive Director Prisoners'
Legal Services of New York 10 Little Britain Road
Suite 301 Newburgh, NY 12550

*Attorneys for Plaintiff*

11