UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KRISTINE BAKER,

                            Plaintiff,

    v.

RALDINO POWELL, *et al.*

                            Defendants.

No. 23-CV-1626 (KMK)

OPINION & ORDER

Appearances:

Amiad M. Kushner, Esq.
MarcAnthony Bonanno, Esq.
Michael T. Stolper, Esq.
Priya Lehal, Esq.
Robert W. Seiden, Esq.
Xintong Zhang, Esq.
Seiden Law LLP
New York, NY
*Attorneys for Plaintiff*

Krin M. Flaherty, Esq.
Megan Welch, Esq.
Prisoners' Legal Services of New York
Ithaca, NY
*Attorneys for Plaintiff*

Catherine Ryan, Esq.
New Paltz, NY
*Attorneys for Plaintiff*

Mario L. DeMarco, Esq.
Law Office of Mario DeMarco PC
Port Chester, NY
*Attorney for Defendant Raldino Powell*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Attorney for Defendants Ellen Gomprecht and Amy Lamanna*

KENNETH M. KARAS, United States District Judge:

Kristine Baker ("Plaintiff") brings this Action pursuant to 42 U.S.C. § 1983, against Raldino Powell ("Powell"), Ellen Gomprecht ("Gomprecht"), and Amy Lamanna ("Lamanna") (collectively, "Defendants"), alleging violations of her constitutional rights arising out of the repeated sexual assaults she endured during her time as an inmate at Bedford Hills Correctional Facility. (*See* Am. Compl. ("AC") (Dkt. No. 9).) Before the Court is Plaintiff's Motion to Amend (the "Motion") the AC to include two new Defendants—Elaine Velez ("Velez") and Christian Nunez ("Nunez")—and to add a First Amendment retaliation claim. (*See* Pl. Mot. to Amend ("Pl. Mot.") (Dkt. No. 88); Pl. Mem. in Supp. Mot. to Amend ("Pl. Mem.") (Dkt. No. 89).) For the following reasons, the Court grants the Motion in part and denies it in part.

I. Background

A. Factual Background

The Court assumes the Parties' familiarity with the facts, and only provides the facts that are necessary to the determination of this Motion.

On February 28, 2020, Plaintiff—who was then an inmate at Bedford Hills Correctional Facility ("Bedford Hills")—sought medical treatment at the Bedford Hills Regional Medical Unit ("RMU") to treat a rash on her stomach. (AC ¶ 21.) At the RMU, Plaintiff was treated by Powell, who was a nurse at the RMU. (*See id.* ¶¶ 6, 22–23.) On February 29, 2020, Plaintiff returned to the RMU for further treatment, where she was again treated by Powell. (*See id.* ¶ 22.) During this interaction, Powell ordered her to pull her pants down, although Plaintiff had not "complain[ed] of a rash on the lower half of her body" and Powell had not "articulate[d] any reason for the inspection of [Plaintiff's] intimate parts." (*See id.* ¶ 25.) Powell also told Plaintiff that she "has a nice body." (*See id.* ¶ 26.) Plaintiff was called back to the RMU at 1:30 P.M. the

same day, under "the impression that further medical examination was required in order to diagnose the rash." (*Id.* ¶ 27.) However, at the RMU, Powell entered the cubicle she was sitting in without warning and kissed her on the mouth. (*See id.* ¶ 28.)

That day, Plaintiff made a Prison Rape Elimination Act ("PREA") complaint regarding her interactions with Powell.[1] (*See id.* ¶ 29.) As part of the complaint process, she met with a non-defendant nurse who discussed and memorialized her complaint. (*See id.* ¶ 29.) She was diagnosed by the nurse as having "rape/trauma syndrome" and "risk for rape/trauma syndrome." (*See id.*) On or around March 1, 2020, Plaintiff called the PREA Statewide Rape Crisis Hotline, and corrected her identification of Powell, who she had previously misidentified. (*See id.* ¶ 30.) Plaintiff alleges Defendant Lamanna—who was the Superintendent of Bedford Hills—received notice of this complaint, and took no action to prevent her further sexual abuse. (*See id.* ¶¶ 8, 31.) Following this initial complaint, Powell approached Plaintiff and threatened her with solitary confinement, where he told her "she would be 'taken care of' by other incarcerated individuals." (*See id.* ¶ 32.) According to Plaintiff, her interactions with Powell escalated drastically following the unwanted kiss. In particular, during her time at Bedford Hills, Plaintiff alleges Powell repeatedly raped her, both while she was in COVID-19 isolation at the RMU, (*see id.* ¶¶ 36–38), and while she was assigned to work at the RMU, (*see id.* ¶¶ 41–42).

In her proposed Second Amended Complaint ("SAC"), Plaintiff alters the pleadings to include Velez (the then Assistant Deputy Superintendent and PREA Compliance Manager at Bedford Hills) and Nunez (the then Deputy Chief of the Sex Crimes Division for the

---

[1] "The Prison Rape Elimination Act of 2003 ('PREA') establishes a zero-tolerance policy for prison rape and imposes national standards for the detection, prevention, reduction, and punishment of prison rape." (*Id.* ¶ 11.)

NYSDOCCS Office of Special Investigations ("OSI")).  (*See* Affirmation of Priya Lehal ("Lehal Aff.") Ex. 1 ("SAC") ¶¶ 10–11 (Dkt. No. 90-1).)  In the SAC, Plaintiff alleges Nunez and Velez were made aware of her first PREA complaint on February 29, 2020.  (*See* SAC ¶ 34.)  The SAC further alleges that that night, Nunez's investigator informed him that she was "unable to obtain [Plaintiff's] medical chart" and Nunez took no further action to acquire these charts.  (*See id*. ¶¶ 36–38.)  The SAC also alleges that Nunez and Velez received notice of Plaintiff's second PREA complaint and took "no subsequent steps" to identify Powell.  (*See id*. ¶ 42.)  The SAC also alleges that Velez was aware of Plaintiff's work placement at the RMU and failed to take any corrective action to re-assign her.  (*See id*. ¶¶ 48–49.)  Furthermore, the SAC alleges that Lamanna, Gomprecht, and Velez were aware of Plaintiff's unmonitored isolation in the RMU.  (*See id*. ¶ 52.)

The SAC also alleges that Velez, Nunez, Lamanna, and Gomprecht knew of various circumstances at Bedford Hills that made Plaintiff's assaults and Powell's retaliation more likely.  The SAC alleges that Defendants were aware of a lack of security cameras in the RMU and policies permitting RMU staff to be alone with inmates.  (*See id*. ¶ 66.)  Further, the SAC alleges that Defendants were "aware of the extensive history of male staff, including medical staff, at Bedford Hills sexually abusing female inmates," (*see id*.), and were "on notice of a practice of retaliation by Bedford Hills staff, including nurses and other RMU staff, against inmates that report staff sexual abuse and sexual harassment," (*see id*. ¶ 84.)

B.  Procedural Background

Plaintiff filed her initial Complaint on March 2, 2023.  (*See* Compl. (Dkt. No. 2).)  On April 20, 2023, she filed her AC.  (*See* AC.)  Discovery began on September 14, 2023.  (*See* Dkt. No. 24.)  On January 31, 2025, Plaintiff moved to amend the AC.  (*See* Pl. Mot.; Pl. Mem.; Lehal

4

Aff.) Defendants submitted their Opposition on February 25, 2025 (*See* Def. Mem. in Opp. Mot. to Amend ("Def. Opp.") (Dkt. No. 93).) Plaintiff replied on March 14, 2025. (*See* Pl. Rep. in Supp. of Mot. to Amend ("Pl. Rep.") (Dkt. No. 94.).)

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[i]t is within the sound discretion of the district court to grant or deny leave to amend." *Barbata v. Latamie*, No. 11-CV-7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (noting that a court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party" (citing *Foman*, 371 U.S. at 182)). But, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman*, 371 U.S. at 182).

When an amended complaint seeks to add a party, Federal Rule of Civil Procedure 21 provides, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "Although Rule

21, and not Rule 15(a)[,] normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." *Clarke v. Fonix Corp.*, No. 98-CV-6116, 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), *aff'd*, 199 F.3d 1321 (2d Cir. 1999); *see also Pitcher v. Union Carbide Corp.*, No. 22-CV-9813, 2023 WL 5277589, at *1 (S.D.N.Y. Aug. 16, 2023) ("When an amendment proposes the addition of new parties, Rule 21 technically governs, but the 'same standard of liberality' applies under either Rule 15 or Rule 21."). "[B]ecause an answer has been filed, the showing necessary under Rule 21 is the same as that required under Rule 15(a)." *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07-CV-1178, 2008 WL 781823, at *1 (S.D.N.Y. Mar. 20, 2008).

   B. <u>Analysis</u>

      1. <u>Relation Back</u>

Defendants first argue that Plaintiff's claims are time-barred. (*See* Def. Opp. 17–20.) "The statute of limitations for Section 1983 claims is found in the 'general or residual state statute of limitations for personal injury actions.'" *Bolden v. Westchester Cnty. New York Bd. of Ethics*, No. 22-CV-10555, 2023 WL 3976931, at *10 (S.D.N.Y. June 12, 2023) (alterations adopted) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)). "In New York, that period is three years." *Id*. (quoting N.Y. C.P.L.R. § 214(5)); *see also Kane v. Mount Pleasant Cent. Sch. Dist*., 80 F.4th 101, 104 (2d Cir. 2023) ("Under well-settled law, claims under Section 1983 . . . are governed by New York's general statute of limitations for personal injury actions under N.Y. C.P.L.R. § 214(5), which is three years."). Here, the violations Plaintiff alleges took place from February to May 2020. (*See generally* SAC.) Plaintiff filed the instant motion in January 2025, nearly two years after the statute of limitations had lapsed. (*See* Pl. Mem (filed on January 31, 2025).) "[W]here, as here, a plaintiff seeks to amend the

complaint after the statute of limitations has expired, the amendments must relate back to the date of the original filing." *Pierre v. Cnty. of Nassau*, No. 17-CV-6629, 2022 WL 2872651, at *5 (E.D.N.Y. July 21, 2022); *see also* Fed. R. Civ. P. 15(c).

      a.   <u>Adding New Claims</u>

To add a new claim after the statute of limitations has elapsed, Plaintiff is required to show that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also Pierre*, 2022 WL 2872651, at *5 (articulating the same standard). "The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Pierre*, 2022 WL 2872651, at *8 (alteration adopted). "Thus, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 128 (2d Cir. 2019) (internal quotations and citation omitted).

Here, the facts forming the basis of Plaintiff's retaliation claim are described in the AC and the Complaint. Like the SAC, the AC and the Complaint also describe Powell as "threaten[ing]" Plaintiff with "solitary confinement" where she would be "'taken care of' by other incarcerated individuals." (*See* AC ¶ 32; Compl. ¶ 32.) Because Plaintiff's retaliation claim arises out of the "general fact situation" described "in the original pleading"—namely that Powell threatened Plaintiff with solitary confinement after he learned of her PREA complaint—the Court concludes that the proposed claim can be "related back" to the Complaint. *Pierre*, 2022 WL 2872651, at *8; *see also Bizelia v. Clinton Towers Hous. Co.*, No. 20-CV-8065, 2022

7

WL 1747763, at *4 n.3 (S.D.N.Y. May 31, 2022) ("Because the allegations in the Amended Complaint arise out of the same conduct, transaction, or occurrence alleged in the Complaint, the Amended Complaint relates back to the date of the Complaint.").

### b. Adding New Parties

Rule 15(c) permits the addition of new parties after the statute of limitations has elapsed under two circumstances. First, Rule 15(c)(1)(A) allows new defendants to be added where "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). In New York, Section 203 of New York Civil Practice Law and Rules ("Section 203") governs whether an amended complaint relates back for the purposes of Rule 15(c)(1)(A) when the amended complaint adds a new party not previously named in the original complaint. *See Maldonado v. Miller*, No. 21-CV-3719, 2024 WL 4043137, at *4–5 (S.D.N.Y. Sept. 4, 2024). Under Section 203, a new party may be added to an amended complaint where:

> (1) both claims arose out of [the] same conduct, transaction or occurrence, (2) the new party is "united in interest" with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Id*. Second, Rule 15(c)(1)(C) permits the addition of new parties where:

> [T]he amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Pierre*, 2022 WL 2872651, at *5. The Court applies each of these standards below.

As to Rule 15(c)(1)(A), the Court concludes that Plaintiff cannot rely on Section 203 to amend the AC to add Velez and Nunez, because Plaintiff fails to meet the second prong of

Section 203's requirements, namely that Velez and Nunez share a "unity of interest" with one another or the other named defendants in the Complaint. "The question of unity of interest is to be determined from an examination of (1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *Harris v. Viau*, No. 17-CV-9746, 2019 WL 1978596, at *6 (S.D.N.Y. May 3, 2019) (alteration adopted) (quoting *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009)). "A jural relationship means that 'because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim and will therefore stand or fall together.'" *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2023 WL 6450398, at *14 (E.D.N.Y. Sept. 30, 2023) (quoting *Hunter v. Deutsche Lufthansa AG*, No. 09-CV-3166, 2013 WL 752193, at *5 (E.D.N.Y. Feb 27, 2013)). "Indeed, the unity-of-interest prong is difficult to satisfy in the absence of a classical vicarious liability relationship." *Doe 1 v. Congregation of the Sacred Hearts of Jesus & Mary*, No. 23-CV-5294, 2024 WL 4276174, at *6 (E.D.N.Y. Sept. 24, 2024) (internal citations and quotations omitted), *appeal pending sub. nom. Doe 2 v. The Congregation of the Sacred Hearts of Jesus and Mary*, No. 24-2940 (2d Cir. Oct. 25, 2024); *Ramos v. Police Officer Maureen Engels*, No. 15-CV-1081, 2016 WL 3619534, at *7 (E.D.N.Y. June 3, 2016) (rejecting the plaintiff's argument that relation-back was warranted "simply because [the defendants] 'obviously share the same defenses,'" and also noting that unity of interest is difficult to show absent "a classical vicarious liability relationship."), *report and recommendation adopted sub nom. Ramos v. Engels*, 2016 WL 3640684 (E.D.N.Y. June 29, 2016).

It is axiomatic that vicarious liability is unavailable in Section 1983 cases. *See O'Brien v. City of Syracuse*, No. 22-CV-948, 2023 WL 6066036, at *18 (N.D.N.Y. Sept. 18, 2023) ("It

9

has long been established that there is no respondeat superior or vicarious liability in suits under Section 1983." (citing *Littlejohn v. City of New York*, 795 F.3d 297, 314–15 (2d Cir. 2015) (italics omitted))), *reconsideration denied*, 2024 WL 4252052 (N.D.N.Y. Sept. 20, 2024). Under Section 1983 "one [defendant] may be held liable while the other is not because each individual defendant's liability will be determined with regard to that defendant's particular acts or omissions." *Burris*, 2023 WL 6450398, at *15 (citations and internal quotations omitted); *see also Maccharulo v. Gould*, 643 F. Supp. 2d 587, 597 (S.D.N.Y. 2009) ("Since liability for damages in a Section 1983 action cannot be predicated on the doctrine of respondeat superior, each individual defendant's liability will be determined with regard to that defendant's particular acts or omissions." (internal citations, quotations, and italics omitted)). For this reason, the Court concludes that Defendants do not share a unity of interest, and therefore that Plaintiff cannot use 15(c)(1)(A) to bring them into the litigation. *See Burris,* 2023 WL 6450398, at *15 (denying leave to amend a Section 1983 claim to add a new defendant where "one may be held liable while the other is not"); *Doe 1*, 2024 WL 4276174, at *6 (denying leave to amend where some putative defendants could be found liable while others were not).

As to Rule 15(c)(1)(C), courts in the Second Circuit have held that where—as here—a plaintiff is seeking to *add* new parties, as opposed to *replacing* one party for another, Rule 15(c)(1)(C) is unavailable. *See Mendez v. Kessler*, No. 23-CV-42, 2024 WL 1722723, at *3 (W.D.N.Y. Feb. 27, 2024) ("[Rule 15(c)(1)(C)] does not allow relation back where the 'plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable.'" (quoting *In re Vitamin C Antitrust Litig.*, 995 F. Supp.2d 125, 129 (E.D.N.Y. 2014))), *report and recommendation adopted*, 2024 WL 1722491 (W.D.N.Y. Apr. 22, 2024); *see also Simmons v. Mason*, No. 17-CV-8886, 2019 WL 4525613, at *8 (S.D.N.Y. Sept. 18, 2019) ("Rule

10

15(c)(1)(C) is inapplicable, because 'the rule applies only where an amendment changes the party or the naming of the party against whom a claim is asserted—not where an amendment adds a previously unmentioned party.'" (quoting *Neal v. Wilson*, 239 F. Supp. 3d 755, 759 (S.D.N.Y. 2017))). Because Plaintiff is seeking to add new parties altogether (Nunez and Velez), as opposed to replacing existing parties, the Court concludes that Rule 15(c)(1)(C) is not an appropriate vehicle for amendment.

\* \* \*

For the foregoing reasons, the Court concludes that the AC may not be amended to include Plaintiff's claims against either Velez or Nunez. However, the Court concludes that the First Amendment claim satisfies Rule 15(c)(1)(B), and therefore may be "related back" to the original claims.

2. Futility

Defendants argue Plaintiff should not be permitted to amend the AC to add a First Amendment retaliation claim because such an amendment would be futile. (*See* Def. Opp. 24–26.) "A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted." *Dass v. City Univ. of New York*, No. 18-CV-11325, 2024 WL 4986914, at \*3 (S.D.N.Y. Dec. 5, 2024) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012)); *Sanders v. SUNY Downstate Med. Ctr.*, No. 22 CV 4139, 2024 WL 4680489, at \*5 (E.D.N.Y. Nov. 5, 2024) (same).

Regarding First Amendment retaliation claims: "[t]he Second Circuit has instructed district courts to view 'prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official[—]even those otherwise not rising to the level of a constitutional violation[—]can be characterized as a constitutionally

proscribed retaliatory act.'" *Baltas v. Snyder*, No. 24-CV-1487, 2025 WL 509423, at *4 (D. Conn. Feb. 14, 2025) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)). To state a claim for First Amendment retaliation, Plaintiff is required to plausibly plead: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Samuels v. New York Dep't of Lab.*, No. 23-CV-8004, 2025 WL 27737, at *4 (S.D.N.Y. Jan. 3, 2025) (quotation marks omitted) (quoting *Dolan*, 794 F. 3d at 294).

Here, the SAC adequately alleges a claim of First Amendment retaliation. First, Plaintiff's PREA complaints are protected activity under the First Amendment. *See Salley v. Capra*, No. 23-CV-4566, 2025 WL 950991, at *5 (S.D.N.Y. Mar. 28, 2025) (noting that "it is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" (quoting *Dolan*, 794 F.3d at 295)); *Grace v. Alvarado*, No. 21-CV-3578, 2024 WL 1859851, at *6 (S.D.N.Y. Apr. 29, 2024) ("Generally speaking, filing complaints against correction officers is protected activity.").

Second, Powell's alleged threat constitutes an adverse action. "'Verbal threats may qualify as adverse actions in the prison retaliation context *only* where they are sufficiently specific and direct." *Bonie v. Annucci*, No. 20-CV-640, 2023 WL 2711349, at *13 (S.D.N.Y. Mar. 30, 2023) (alteration adopted) (emphasis in original) (citation and quotation marks omitted). "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." *White v. Westchester Cnty.*, No. 18-CV-730, 2018 WL 6726555, at *17 (S.D.N.Y. Dec. 21, 2018) (quoting *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010)). The SAC's allegations sufficiently plead direct and specific threats to

12

constitute adverse action. According to the SAC, for example, Powell threatened Plaintiff with placement in solitary confinement and did so in direct response to being informed of Plaintiff's PREA complaint. (*See* SAC ¶ 44.) As alleged, the threat is particular (placement in solitary confinement) and direct (made in response to learning of Plaintiff's complaint). *See White*, 2018 WL 6726555, at *18 (holding that a defendant's threat constituted adverse action where the defendant threatened physical harm to the plaintiff and explained exactly how that harm would be brought about). And while the SAC's allegations on this score are not particularly robust, Powell's threat is clearer and more detailed than the mine-run of threats that have been found to be too indirect and non-specific to constitute adverse action. *See Bonie*, 2023 WL 2711349, at *13 (concluding that "[y]ou wanna sue, I'll show you tomorrow how nasty I can get," was insufficiently specific and direct to constitute adverse action); *Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *18 (S.D.N.Y. Mar. 30, 2016) (dismissing First Amendment retaliation claims because an officer's statements to a plaintiff that his "grievances were unlikely to succeed" and that he "would handle things 'his way'" were insufficiently specific or direct (citation and quotation marks omitted)). Therefore, construing all inferences in Plaintiff's favor, the Court concludes that this threat is sufficiently direct and specific to constitute adverse action. *See Hill v. Laird*, No. 06-CV-126, 2014 WL 1315226, at *8 (E.D.N.Y. Mar. 31, 2014) (concluding that threats to file disciplinary reports to keep the plaintiff in solitary confinement constituted adverse action); *Sanchez v. Velez*, No. 08-CV-1519, 2009 WL 2252319, at *5 (S.D.N.Y. July 24, 2009) (concluding that being threatened with involuntary confinement in "the box" constituted adverse action).

Finally, Plaintiff has adequately alleged facts that plausibly establish a causal connection between the protected speech and the adverse action. "A plaintiff may establish causation either

13

directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *White*, 2018 WL 6726555, at *18 (quoting *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015)).  Here, the SAC suggests that Powell's threat was made immediately after he learned of Plaintiff's PREA complaint.[2]  (*See* SAC ¶¶ 43–44.)  The temporal proximity between her protected activity and his threats is sufficient to state a claim for retaliation.  *See Harris v. Kenny*, No. 21-CV-703, 2022 WL 4252142, at *11 (D. Conn. Sept. 15, 2022) (concluding that a temporal proximity of a few days was sufficient circumstantial evidence of causation); *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 478 (E.D.N.Y. 2019) (noting that courts have held that the passage of weeks between the protected activity can suggest a causal connection).

However, the Court agrees that the SAC fails to plausibly allege Lamanna and Gomprecht's personal involvement in the alleged retaliation.  The SAC merely alleges that Lamanna and Gomprecht received a report containing "allegations of retaliatory actions by RMU staff since the filing of [Plaintiff's first] PREA complaint."  (*See* SAC ¶ 41.)  But courts have routinely held that receipt of a complaint is insufficient to demonstrate personal involvement.

---

[2] Though the SAC does not explicitly state the number of days between Plaintiff's PREA complaint and Powell's threat, the ordering of allegations in the SAC strongly suggests the threat occurred within a few days of her second complaint.  (*See* SAC ¶ 43 (Powell learned of Plaintiff's complaint "in the ensuing days")).  At the very least, Powell's threat must have occurred within the three months that Plaintiff was an inmate at Bedford Hills.  (*See* SAC ¶ 13 (describing Plaintiff as being transferred to Bedford Hills on February 12, 2020); *id.* ¶ 62 (describing Plaintiff as being transferred from Bedford Hills on May 13, 2020).)  Courts have found intervals greater than three months to be sufficiently temporally proximate to suggest causation.  *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (concluding that six months between the protected activity and adverse action was sufficient to suggest causation); *Clark v. Boughton*, No.21-CV-1372, 2022 WL 4778582, at *11 (D. Conn. Oct. 3, 2022) (causation sufficiently alleged where eight months passed between the protected activity and adverse action).

*See, e.g., Jordan v. Quiros*, No. 23-CV-254, 2024 WL 3219130, at *11 (D. Conn. June 28, 2024) (noting that "merely receiving the grievance is insufficient to establish personal involvement" and collecting cases); *Brown v. Griffin*, No. 18-CV-5439, 2019 WL 4688641, at *8 (S.D.N.Y. Sept. 25, 2019) ("[I]t is well-established that an allegation that a supervisory official ignored a prisoner's letter of protest is insufficient to hold that officer liable for the alleged violations." (alterations adopted) (citation and quotation marks omitted)). So too here: Lamanna and Gomprecht cannot be held liable simply by virtue of receiving a letter about alleged misconduct. *See Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 18-CV-1312, 2019 WL 2352981, at *8 (N.D.N.Y. June 4, 2019) (dismissing a First Amendment retaliation claim against a supervisory defendant where the defendant's personal involvement was premised on their receipt of grievance letters from the plaintiff).

Finally, the SAC's assertion that Lamanna and Gomprecht were on notice of "a practice of retaliation . . . against inmates that report staff sexual abuse and sexual harassment" is too conclusory to adequately plead personal involvement or deliberate indifference on the part of Defendants. *See Mazyck v. Keller*, 531 F. Supp. 3d 630, 649 (W.D.N.Y. 2021) (concluding that allegations that, inter alia, there was "a longstanding culture of brutality at Elmira" did not have "the required specificity to hold supervisory defendants responsible for the actions of their subordinates").

Even if the Court accepted as true that such a practice of retaliation existed at Bedford Hills, the SAC does not provide pleadings suggesting that either Lamanna or Gomprecht knew of such a practice. Such allegations are ordinarily required to establish deliberate indifference. In *Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021), the court held that the plaintiff had plausibly alleged that the defendants were on notice of a rampant

15

history of sexual assault where there were various statistical reports on prison rape that the defendants were likely aware of, where defendants had previously been named as defendants in cases where inmates claimed assault by other correctional officers, and where numerous correctional officers had been prosecuted and convicted for sexual assault. *See id*. at *10. Similarly, in *Pusepa v. Annucci,* No. 17-CV-1765, 2019 WL 690678 (S.D.N.Y. Feb. 19, 2019), the court held that supervisory defendants had notice of sexual abuse where the plaintiff alleged that there were seven criminal charges of rape against staff members, seven pregnancies of inmates by DOCCS staff, over 200 complaints of sexual misconduct by inmates against DOCCS staff, and 78 investigations opened by OSI in the facility. *See id.* at *7. Unlike the allegations in those cases, the SAC does not describe what, if any, facts that would have put Velez and Nunez on notice of the history of retaliation it alleges, and therefore this allegation cannot support a claim that either Defendant was personally involved in the retaliation. *See Khapesi v. City of New York*, No. 13-CV-4391, 2014 WL 2605342, at *8 (S.D.N.Y. June 10, 2014) ("This is not a situation, for example, where plaintiff contends (in anything but conclusory fashion) that the City had received prior reports of clergy-on-inmate sexual abuse.").

* * *

For these reasons, the Court concludes that the SAC's First Amendment retaliation claims are futile as asserted against Lamanna and Gomprecht, but not as against Powell.

3. Undue Delay, Prejudice, Bad Faith

"[W]here a significant period of time elapses prior to the filing of a motion to amend, the moving party must explain the reason for the extended delay." *Dass*, 2024 WL 4986914, at *5 (citing *Park B. Smith, Inc. v. CHF Indus. Inc*., 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011)). Here, Plaintiff provides no explanation for the nearly three-year delay between her initial Complaint

16

and her Motion to add a First Amendment claim, even though the relevant factual circumstances were pled in her initial Complaint.  (*See generally* Pl. Mem; *see also* Compl. ¶ 32.)  Nevertheless, "[t]he Court's inquiry, however, does not end at the question of whether there was undue delay."  *Julian v. Only What You Need, Inc.*, No. 23-CV-9522, 2025 WL 278932, at *2 (S.D.N.Y. Jan. 23, 2025); *see also Dass*, 2024 WL 4986914, at *5 ("Delay alone is not grounds for denying amendment.")  In order to deny leave to amend on this basis, the Court must also find that the delay was prejudicial or the result of bad faith.  *See Julian*, 2025 WL 278932, at *2 ("[M]ere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981))).

Here, Defendants have not shown that permitting Plaintiff to amend would unduly prejudice them.  Although Defendants argue that permitting Plaintiff to amend the SAC to include a First Amendment claim would prejudice them by requiring additional discovery, they fail to identify the specific parties that will need to be deposed or the types of documents that will require discovery.  (*See* Def. Opp. 17 (arguing that additional discovery will be needed to "investigat[e] whether any witnesses can be located to corroborate or disprove Plaintiff's allegations").)  Plaintiff, on the other hand, maintains that she does not intend to seek additional discovery.  (*See* Pl. Mem. 18.)  Furthermore, no motion for summary judgment is currently pending before the Court.  (*See generally* Dkt.)  In circumstances such as these, courts often find that any additional discovery that is needed is unlikely to be prejudicial.  *See, e.g.*, *Dass*, 2024 WL 4986914, at *5 (rejecting defendants' argument that they were unduly prejudiced where they "[did] not state with any specificity what additional discovery they would need," where the plaintiff stated that they did not need any additional discovery, and where "a briefing schedule

for summary judgment [had] not yet been set"); *Walsh v. Versa Cret Contracting Co., Inc.*, No. 21-CV-5697, 2023 WL 3570699, at *7 (E.D.N.Y. May 18, 2023) (rejecting defendants' arguments that they would be prejudiced by additional discovery where defendants did not specify who they intended to depose or whether there were any relevant documents in the plaintiff's possession, and where the plaintiff stated that they would not require additional depositions).

Furthermore, courts generally find that "the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 314 (S.D.N.Y. 2021); *see also Walsh*, 2023 WL 3570699, at *7 ("[T]he need to conduct additional discovery is not, in itself, sufficient to constitute prejudice." (quoting *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514, 2010 WL 445192, at *12 (S.D.N.Y. Feb. 8, 2010) (collecting cases))). For these reasons, the Court concludes that amendment would not unduly prejudice Defendants.

Finally, Defendants have not argued that Plaintiff's motion to amend was made in bad faith. (*See generally* Def. Opp.) "The burden of establishing bad faith falls on Defendants." *Dass*, 2024 WL 4986914, at *5 (citing *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020)). As Defendants have made no allegations as to Plaintiff's bad faith, the Court concludes that Defendants have failed to carry their burden on this issue. *See Kelly v. Cmty. Bank, N.A.*, No. 19-CV-919, 2020 WL 777463, at *3 (N.D.N.Y. Feb. 18, 2020) ("Here, Defendant does not allege, nor does the record indicate, that Plaintiff's motion to amend was brought in bad faith."); *Henderson v. Annucci,* No. 14-CV-445, 2016 WL 3039687 (W.D.N.Y. Mar. 14, 2016) (granting plaintiff's motion to amend because, inter alia, "[the

d]efendants [had] not articulated a sufficient basis to conclude that the plaintiff's allegations in the original complaint were made in bad faith"), *report and recommendation adopted*, 2016 WL 3031353 (W.D.N.Y. May 27, 2016).

The Court therefore concludes that Plaintiff's delay was neither prejudicial nor made in bad faith.

### III.   Conclusion

For the foregoing reasons, the Court grants Plaintiff's Motion to Amend the AC to add a First Amendment claim against Powell but denies Plaintiff's Motion as to all other proposed amendments. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 88.)

SO ORDERED.

Dated:   September 22, 2025
         White Plains, New York

                                              _____
                                              KENNETH M. KARAS
                                              United States District Judge